IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JEFFERY LEE SUTTON,

      **Plaintiff,**

v.                                  **Case No. 3:21-cv-00109**

WESTERN REGIONAL JAIL
and CORRECTIONAL CENTER, et al.,

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

Jeffery Lee Sutton ("Sutton"), proceeding *pro se* and incarcerated in the Western Regional Jail and Correctional Facility ("WRJ") in Barboursville, West Virginia, filed a complaint pursuant to 42 U.S.C. § 1983 seeking monetary and injunctive relief. (ECF No. 2). Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint. (ECF No. 19). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons that follow, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss, (ECF No. 19), be **GRANTED**; the Complaint, (ECF No. 2), be **DISMISSED**, without prejudice; and this action be removed from the docket of the Court.

## I.    Relevant Facts and Procedural History

### A.    Complaint

On February 12, 2021, Sutton initiated this action seeking relief under 42 U.S.C. §
1983 for alleged violations of his constitutional rights while housed at the WRJ, which he
names as a defendant in this case. (ECF No. 2). Sutton claims that between August 22 and
December 30, 2020, he was denied his "basic human rights," including access to
administrative remedies, laundry services, and medical care. (*Id.* at 4). He further alleges
that he was "served spoiled beverages and given contaminated food that was dropped on
dirty floors with the presence of a positive case of COVID-19 and claims he was prevented
from accessing his mail, treated unfairly by jail staff, and denied access to grievance
forms. He also was denied fresh blankets and linens, as well as access to hygiene. (*Id.* at
4–5). Sutton contends that he was "unfairly accused and found guilty of violating facility
rules and removed from the goals program[.]" For relief, he seeks to have his alternative
sentence reinstated and be placed back into the "goals" program, to be "financially
compensated for extra time spent in jail" because of being found guilty of violating jail
rules, to receive an apology letter, "be found not guilty" for the aforementioned
institutional offense, and to be given a "paid trustee job" at the jail. (*Id.* at 5–6). As for
administrative remedies, Sutton contends that he "[u]tilized L.O.C.; Filed Grievances;
Utilized Disc Appeal Process" but his requests were all "filed, denied, overturned, or
rejected[.]" (*Id.* at 3).

On April 7, 2021, Defendants filed an answer to Sutton's complaint. (ECF No. 10).
They assert 29 defenses and demand a jury trial. (*Id.* at 1–7).

### B.    Status Conference and Discovery Order

On May 21, 2021, the undersigned held a status conference attended by Sutton and

defense counsel at which the parties discussed Sutton's claims. After hearing from the parties, the undersigned ordered Defendants to produce, *inter alia*, documents that would aid Sutton in identifying with greater specificity the individuals against whom he wished to assert claims. (ECF No. 13). In addition, the documents conceivably would provide Sutton with information that would allow him to amend his complaint to include factual support for his bare bones, conclusory claims. The undersigned explained to Sutton the need for him to provide factual allegations in the amended complaint in order to assert a plausible cause of action.

During the conference, Sutton was given a chance to elaborate on his claims. Sutton stated that (1) jail staff gave him spaghetti which had been dropped on the floor; (2) he was placed on COVID-19 quarantine for thirty days and, during this period, he did not receive his meals or medicine on a timely basis, was denied hygiene, and was exposed to unsanitary conditions; (3) he was falsely accused and found guilty of drug trafficking after speaking to another prisoner during medication pass, and this infraction resulted in him being punished with 15 days of loss of privileges; (4) after completing his punishment, he was unfairly placed in administrative segregation for four months; and (5) his placement in segregation caused him to be dismissed from the GOALS program[1] and lose his opportunity for an alternative sentence and possible parole. Sutton indicated, however, that he was unable to readily discern who was involved in some of the events because officers wore protective equipment due to the presence of COVID-19 in the pod. For that reason, the undersigned advised Sutton that he could amend his complaint, in part to specify which individuals were responsible for the acts he described, and ordered

---

[1] Sutton explained that the GOALS program is an in-facility rehab program offered by the jail.

Defendants to provide Sutton with the above-mentioned information to aid him in identifying jail staff on duty during the relevant time frame. The undersigned explained to Sutton how to amend his complaint and further explained that he would need to file a list of any witnesses known to him at the time and to describe any injuries he suffered as a result of the alleged constitutional violations. In addition, the undersigned explained in detail how the discovery process worked, providing examples of various forms of discovery that Sutton could use to prepare his case, and advised Sutton of the Prison Litigation Reform Act's ("PLRA") requirement that there be some injury associated with his Eighth Amendment claims. Finally, the undersigned explained the importance of naming *individuals* as defendants and specifying what each individual did in violation of Sutton's rights.

On May 24, 2021, the undersigned entered an Order documenting the materials to be provided to Sutton, granting him until July 23, 2021 to file an amended complaint, and setting a pretrial schedule. (ECF No. 14). In that Order, Sutton was instructed to file a list of any individuals with information about his claims and damages, as well as a description of his injuries. (*Id.*). On June 10, 2021, Sutton responded to the Court's order, stating that he was not able to comply with the Order insofar as it required him to provide a list of individuals with knowledge of his claims and injuries, because Defendants had not yet provided him with that information. (ECF No. 18). Sutton likewise failed to supply a description of his injuries, although he should have been aware of his injuries even without the materials from Defendants.

On June 11, 2021, as ordered, Defendants filed sealed materials to comply with the Court's order. (ECF No. 16). In addition, Defendants filed a Notice of Compliance, indicating that they had given Sutton the information filed under seal, as ordered by the

Court. (ECF No. 17). Despite receiving that information, which totaled over 350 pages and included the names of all of the correctional officers relevant to Sutton's claims, he has not, to this date, filed his disclosure of witnesses and injuries, nor amended his complaint.

### C.   *Defendants' Motion to Dismiss*

On August 20, 2021, after expiration of the deadline to amend the complaint and the deadline for written discovery, Defendants filed a motion to dismiss Sutton's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, along with a memorandum of law in support. (ECF Nos. 19, 20). Defendants contend that Sutton has neither amended his complaint, nor produced the information required by the Court's Order. (ECF No. 20 at 2–3). Defendants argue that Sutton has "failed to participate in the litigation of this matter in any material form," and assert that his complaint, as it is currently written, is insufficient to state a claim for which relief may be granted. (*Id.* at 4). They contend that Sutton has not provided enough factual allegations to establish a *prima facie* case of Eighth Amendment violations. (*Id.* at 5–8). As Defendants stress, Sutton has not alleged that he suffered any specific injury or was "deprived of an identifiable human need." (*Id.* at 7). Furthermore, Defendants contend that the combination of conditions Sutton described at the status conference does not give rise to a constitutional violation, even when accepting all allegations as true. (*Id.* at 9).

Defendants next argue that Sutton's complaint should be dismissed because of his failure to comply with the Court's discovery order requiring him to provide the names of people he believed to have knowledge of his claims and a description of his injuries. (*Id.* at 9–10). Defendants claim that they are prejudiced by Sutton's failure to provide the information because it is "impossible to conduct depositions without knowing the individuals or damages involved." (*Id.* at 10–11). They ask the Court to require Sutton to

5

pay the reasonable expenses and attorney fees associated with bringing this action. (*Id*. at 11). Next, Defendants argue that Defendant WRJ is not a "person" for the purposes of § 1983 and, thus, cannot be sued in this action and furthermore the WRJ is entitled to immunity from suit under the Eleventh Amendment to the United States Constitution. (*Id*. at 11–14). Defendants further assert that the individual defendants named in their official capacities cannot be sued in view of their Eleventh Amendment immunity. (*Id*. at 15–16). Finally, Defendants argue that Sutton's complaint should be dismissed because he failed to exhaust his administrative remedies before filing suit. (*Id*. at 16–19).

On August 23, 2021, the undersigned ordered Sutton to respond to Defendants' motion within 14 days after its receipt. (ECF No. 21). In the Order, Sutton was told that his failure to file a response could lead to the conclusion that Defendants' contentions were undisputed, resulting in a dismissal of his complaint. (ECF No. 21). Despite receiving this warning, Sutton filed no response in opposition to the Motion to Dismiss. Furthermore, his initial disclosures are now five months past due; his amended complaint is nearly fours months late, and he failed to serve any written discovery within the time frame allowed for such discovery.

## II.    <u>Standard of Review</u>

Defendants seek dismissal under Fed. R. Civ. P. 12(b)(6). Because their Motion to Dismiss was filed after their Answer to the Complaint, the motion technically should be considered as one for judgment on the pleadings under Fed. R. Civ. P. 12(c). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). This distinction makes no practical difference, however, because the same standard of review applies to motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c). *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002).

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (stating to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"). Under this standard, the Court will assume that the facts alleged in the complaint are true and will draw all reasonable inferences in Sutton's favor as the nonmoving party. *Burbach Broad. Co. of Delaware*, 278 F.3d at 405-06. "Furthermore, when as here, a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, '[the court] must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (quoting *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)).

Although the Court must "take[s] the facts in the light most favorable to the plaintiff, ... [the Court] need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). Moreover, a complaint fails to state a claim when, accepting the plaintiff's well-pleaded allegations as true and drawing all reasonable inferences, the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do" and a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

Sutton files his complaint *pro se*, and courts are required to liberally construe *pro se* complaints. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.    Discussion

### A.    *Availability of Suit Against Defendant WRJ*

Sutton names several defendants in his complaint, including the WRJ. (ECF No. 2). Title 42 U.S.C. § 1983 provides a remedy to parties who are deprived of federally protected civil rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171-172. In order to state a viable claim under § 1983, a plaintiff must show that: (1) a ***person*** deprived the plaintiff of a federally protected civil right, privilege, or immunity and (2) that the ***person*** did so under color of State law. *See American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-52 (1999) (emphasis added).

In *Will v. Mich. Dept. of State Police,* the Supreme Court of the United States ("Supreme Court") considered "the question whether a State, or an official of the State

while acting in his or her official capacity, is a 'person' within the meaning of ... § 1983." *Will*, 491 U.S. 58, 60 (1989). Examining the language and purpose of the statute, the Supreme Court ultimately concluded that Congress did not intend to subject States to liability for deprivations of civil liberties, when such suits would have been barred by the States' sovereign immunity. *Id.* at 66. The holding in *Will* applied not only to lawsuits against the State, itself, but also to suits against "public entities and political subdivisions" that were an "arm or alter ego" of the State. *Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (quoting *Moor v. Alameda County,* 411 U.S. 693, 717 (1973)).

The law is well settled that regional jails in West Virginia, such as the WRJ, are arms of the State of West Virginia. *See Hall v. Pszczolkowski*, No. 5:14CV150, 2015 WL 6742107, at *3 (N.D.W. Va. Nov. 4, 2015) (holding that "state detention facilities are 'arms of the state'") (citing *Preval v. Reno*, 203 F.3d 821 (Table), No. 99-6950, 2000 WL 20591, *1 (4th Cir. Jan. 13, 2000) (unpublished per curiam)); *Kinder v. PrimeCare Med., Inc.,* No. 3:13–31596, 2015 WL 1276748, at *2 (S.D.W. Va. Mar. 19, 2015) (dismissing the WRJ from § 1983 suit on Eleventh Amendment grounds); *Skaggs v. W. Reg'l Jail,* No. 3:13–3293, 2014 WL 66645, at *1, *4 (S.D.W. Va. Jan. 8, 2014) (dismissing the WRJ from § 1983 suit and adopting finding that the WRJ is arm of the State for Eleventh Amendment purposes). Therefore, the undersigned **FINDS** that the WRJ, as an arm of the State, is not a "person" subject to suit under § 1983 and is entitled to dismissal on this ground. *See Roach v. Burch,* 825 F. Supp. 116 (N.D.W. Va. 1993); *Will,* 491 U.S. at 109; *Cantley v. Western Regional Jail and Correctional Facility Authority,* 728 F. Supp.2d 803 (S.D.W. Va. 2010) (finding that the West Virginia Regional Jail Authority and Correctional Facility is not a "person" for purposes of a claim for money damages under § 1983.); *Lewis v.*

9

*Western Reg'l Jail,* No. 3:11–cv–01016, 2012 WL 3670393, at *5 (S.D.W. Va. July 24, 2012) (recognizing that "the WRJ is not a person subject to suit under § 1983"), *report and recommendation adopted by* 2012 WL 3726874 (S.D.W. Va. Aug. 27, 2012); *Dement v. Summers Cnty. Courthouse,* No. 5:13–cv–08899, 2015 WL 461560, at *3 (S.D.W. Va. Feb. 3, 2015) (finding that Southern Regional Jail was not subject to § 1983 suit). Consequently, the WRJ should be dismissed from this civil action.

### B.    *Failure to State a Claim*

Having determined that Sutton cannot properly lodge a claim against the WRJ under § 1983, the undersigned will address Sutton's claims as they pertain to the other named defendants. Significantly, the Court must make this determination based upon the allegations contained in the complaint, as originally presented, because Sutton failed to amend the complaint as directed at the status conference.

In his complaint, Sutton provides a litany of wrongs he believes were committed against him during his incarceration. However, he merely lists the alleged constitutional violations in a conclusory manner, without providing any facts to support or explain the violations. For example, he claims that he was denied "basic human rights," "laundry services," access to mail and medical services, "blanket exchange" and "linen exchange" without any further elaboration. Similarly, he names Defendants Aldridge and Fleming, as well as "Unknown Correctional Staff" in the caption of his complaint, but fails to attribute any particular constitutional violation to any specific defendant. (ECF No. 2). Moreover, as was explained at length to Sutton during the status conference, his complaint fails to identify an injury flowing from the alleged violations.

As currently presented, Sutton's contentions do not state a constitutional violation. The Eighth Amendment "imposes duties on [prison] officials who must provide humane

conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (*citing Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)). However, "[p]rison conditions may be 'restrictive and even harsh.'" *Farmer*, 511 U.S at 833 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981) ("To the extent that [prison] conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."). "The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments." *Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir. 1993). Thus, not every uncomfortable condition of confinement is actionable. *Rhodes,* 452 U.S. at 347. Ultimately, this prohibition "does not mandate comfortable prisons, and only those deprivations denying the 'minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (quoting *Rhodes,* 452 U.S. at 347).

In order for Sutton to prosecute a case against the defendants, he must show both (1) the deprivation of a basic human need that was "sufficiently serious," when measured by an objective standard, and (2) that the responsible prison officials had a "sufficiently culpable state of mind." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). To satisfy the objective component, Sutton must establish that the challenged condition caused or constituted an extreme deprivation. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Isolated or short-term deprivations do not typically rise to the level of a constitutional violation as they "are simply part of the general level of discomfort anyone can expect to experience while in custody." *Jamison v. Kincaid*, No. 3:19CV19, 2021 WL 4199997, at *22 (E.D. Va. Sept. 15,

2021) (quoting *Tesch v. Cty. of Green Lake*, 157 F.3d 465, 476 (7th Cir. 1998)). Furthermore, to demonstrate an *extreme* deprivation, Sutton must allege "a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." *Odom v. South Carolina Dept. of Corrections*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *De'Lonta*, 330 F.3d at 634). "Compelling a showing of significant physical or emotional harm, or a grave risk of such harm, infuses an element of objectivity into the analysis, lest resolution of the seriousness of the deprivation devolve into an application of the subjective views of the judges deciding the question." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citing *Strickler*, 989 F.2d at 1370–80).

"*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson*, 501 U.S. at 304 (emphasis in original). "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id*. at 305.

To fulfill the subjective component, Sutton must demonstrate that each individual named in the complaint acted with "deliberate indifference" to Sutton's health or safety. *Farmer*, 511 U.S. at 834. The Supreme Court explained:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. Deliberate indifference is more than mere negligence but less than malice. *Flores v. Stevenson,* Civil Action No. 2:11–cv–01278–TMC–BHH, 2012 WL 2803721 (D.S.C. May 11, 2012). Put simply, the individuals named in the complaint would have a sufficiently culpable state of mind if they were each aware of an excessive risk of harm to Sutton's health or safety, but disregarded it. *See Wilson*, 501 U.S. at 298; *Brown v. North Carolina Dept. of Corrections*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)) ("[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.")

In addition to the legal principles set forth above, Sutton's claims are governed by the PLRA, 42 U.S.C. § 1997e(e). The PLRA expressly prohibits the filing of civil actions by prisoners "confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Although the PLRA does not define "physical injury" and the Fourth Circuit has not provided a definition, other Courts have held that the "physical injury" referenced by the Act need not be significant, but it must be more than *de minimis. See, e.g., Flanory v. Bonn,* 604 F.3d 249, 254 (6th Cir. 2010); *Mitchell v. Brown & Williamson Tobacco Corp.,* 294 F.3d 1309, 1312–13 (11th Cir. 2002); *Siglar v. Hightower,* 112 F.3d 191 (5th Cir. 1997); *Zehner v. Trigg,* 952 F. Supp. 1318 (S.D. Ind. 1997). "A plaintiff seeking compensatory damages for emotional injuries cannot rely on conclusory statements that the plaintiff suffered emotional distress [or] the mere fact that a constitutional violation occurred, but, rather, the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." *Knussman v. Maryland*, 272 F.3d 625, 640 (4th Cir. 2001), *quoting Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996) (internal

quotation marks omitted).

Sutton did not avail himself of the opportunity to amend his complaint to properly allege claims against the named defendants and assert a compensable injury. Even when given an opportunity to elaborate on his claims at the status conference, Sutton was unable to supply more than broad statements regarding the operations of the WRJ. Although Defendants provided Sutton with his inmate file and other information that allowed him to clarify the targets of his claims, Sutton did not use the information. As such, his complaint fails to provide enough facts to allow the Court to infer that an act or omission by the named defendants deprived Sutton of his rights in accord with the standards described above.

In regard to Sutton's claim that he was wrongfully accused and disciplined for trafficking drugs while at the WRJ, he likewise fails to provide any supporting information. The records from Sutton's inmate file indicate that a licensed practical nurse and a correctional officer witnessed Sutton giving one of his medications to another inmate. (ECF No. 16-1 at 43-46). When the other inmate was stopped and told to open his hand, Sutton's medication fell to the floor. (*Id*.). Sutton was charged and found guilty through a disciplinary hearing process. (ECF No. 16 at 64). Sutton objected to the guilty finding on the grounds that the written charge had the wrong rule number on it; he was not caught on camera transferring the medication; and there was insufficient evidence to support the charge. (*Id*. at 71-72). Sutton did not raise any procedural due process objections to the disciplinary procedure itself. The hearing officer's decision was affirmed based on the eye witness statements, and Sutton provides no further information regarding this claim. (*Id*. at 64). As a result, his complaint is equally deficient in stating a plausible cause of action related to the disciplinary action taken by the WRJ.

Based on his statements at the status conference, Sutton possesses more information and can provide greater detail about the nature and circumstances of his claims, some of which may possibly be more serious than represented in his complaint. However, the Court cannot rewrite Sutton's pleading to cure its obvious deficiencies and cannot infer the existence of violations in the absence of factual support. Despite being advised of the need and method to do so, Sutton has failed to amend his complaint to provide sufficient detail to state a plausible claim against the named defendants. Accordingly, the undersigned **FINDS** that the complaint fails to state a cause of action against any of the named defendants and, for that reason, the complaint should be dismissed. However, given that the statute of limitations may not have expired on some or all of Sutton's potential claims, the undersigned recommends that the dismissal be without prejudice.

### C.    *Eleventh Amendment Immunity*

Defendants argue that the WRJ and the individual defendants named in their official capacities are entitled to dismissal of the claims against them on the basis of sovereign immunity available under the Eleventh Amendment to the United States Constitution. The Eleventh Amendment states in relevant part: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the Eleventh Amendment refers only to suits by citizens of other states, the Supreme Court has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (2009) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S.

15

89, 100 (1984)) (markings omitted). The immunity created by the Amendment protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011) (citing *Will,* 491 U.S. at 70); *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").

As noted earlier, the WRJ is an arm of the State of West Virginia and therefore is entitled to sovereign immunity in Section 1983 cases filed in federal court. In regard to the individual defendants, the law is well settled that an officer of a State acting in his or her official capacity is likewise entitled to sovereign immunity from claims for money damages. *Will,* 491 U.S. at 70. As the Supreme Court explained in *Will*, "a suit brought against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different than a suit against the State itself." *Id.* at 71. "[W]hen the action is in essence one for the recovery of money from the State, the State is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Department of Treasury of Ind.*, 323 U.S. 459, 464 (1945). Moreover, because a plaintiff making a § 1983 claim must name a person acting under color of state law, it follows that state officials acting in their official capacities are not "persons" subject to a claim for compensatory damages under § 1983. *Will,* 491 U.S. at 71.

Notwithstanding the immunity afforded state officials acting within their official capacities, when state officials act in their personal capacities, while under color of state

law, they do not enjoy sovereign immunity from suit. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991). The distinction lies not in "the capacity in which the officer inflicts the alleged injury," but in "the capacity in which the state officer is sued." *Id.* at 26. The "Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983." *Id.* at 30-31 (quoting *Schuerer v. Rhodes,* 416 U.S. 232, 238 (1974)). Therefore, the availability of sovereign immunity for the defendant state officials rests upon the capacity in which they were sued by Sutton.

The determination of whether a defendant has been named as a defendant in his official or individual capacity is generally determined by examining "the face of the complaint." *Amos v. Maryland Dep't of Pub. Safety & Corr. Servs.,* 126 F.3d 589, 609 (4th Cir. 1997), *vacated on other grounds by* 524 U.S. 935 (1998). However, "a plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." *Biggs v. Meadows,* 66 F.3d 56, 60 (4th Cir. 1995). "When a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Biggs*, 66 F.3d at 61. In *Foreman v. Griffith*, the Fourth Circuit discussed the significance of these factors in *Biggs*:

> With respect to assessing the nature of a plaintiff's claim or claims, the *Biggs* court stated that the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom or the lack of indicia of such a policy or custom on the face of the complaint indicates that a state actor has been sued in his individual capacity. With respect to the nature of the relief sought, the *Biggs* court also stated that the plaintiff's request for compensatory or punitive damages indicates an individual capacity suit since such relief is unavailable in official capacity suits. Finally, with respect to the course of proceedings, the *Biggs* court stated that the defendant's assertion of qualified immunity as a defense indicates an individual capacity suit, since such a defense is only available in individual capacity suits.

81 Fed. Appx 432, 435 (4th Cir. 2003). Ultimately, "the underlying inquiry remains whether the [p]laintiff's intention to hold a defendant personally liable can be ascertained fairly." *Biggs*, 66 F.3d at 61.

Because Sutton does not attribute any particular act to any specific defendant, it is difficult to determine in which capacity he intended to sue Superintendent Aldridge, Major Fleming, and the unknown correctional staff. Sutton does not complain about a policy or custom enforced by the defendants, and he asks for a variety of relief, including prospective relief as well as money damages. Because it is not clear in what capacity the defendants have been sued, the undersigned **FINDS** that, to the extent that Sutton seeks money damages from the individual defendants in their official capacities, the defendants are entitled to immunity under the Eleventh Amendment.

Having found that the WRJ and the individual defendants are entitled to Eleventh Amendment immunity as explained above, the undersigned must consider whether there is an exception to that immunity. Three narrow exceptions to Eleventh Amendment immunity exist. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir.2012). First, the State may waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). Such a waiver must be express, or in other words, the waiver must be an "unequivocal statement of the state's intention to subject itself to suit in federal court." *See Regueno v. Erwin*, No. 2:13-CV-00815, 2013 WL 1837881, at \*3 (S.D.W. Va. May 1, 2013) (quoting *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468, 471 (4th Cir.1988)) (markings omitted); *and Price v. W. Virginia Air Nat'l Guard, 130TH Airlift Wing*, No. 2:15-CV-11002, 2016 WL 3094010, at \*2-3 (S.D.W. Va. June 1, 2016) (holding that insurance provisions contained in the West Virginia Code provide a limited waiver of the State's

sovereign immunity in state courts; however, that waiver does not extend to suits brought against the State in federal court). Historically, the State of West Virginia has not waived its sovereign immunity for itself or its officials in this type of suit, and there is no indication that the State would do so now. *See Kinder*, 2015 WL 1276748, at \*7; *Skaggs*, 2014 WL 66645, at \*5; *Chafin v. W. Reg'l Jail*, No. 3:13-cv-01706, 2013 WL 3716673, at \*4 (S.D.W. Va. July 12, 2013); *Thompson v. W. Va. Reg'l Jail/Corr. Auth.*, No. 3:13-1897, 2013 WL 3282931, at \*4 (S.D.W. Va. June 27, 2013); *Meadows v. Huttonsville Corr. Ctr.*, 793 F. Supp. 684, 686 (N.D.W. Va. 1992). Consequently, the waiver exception does not apply here.

Second, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)). In *Will*, the Supreme Court concluded that Congress did not have the States in mind as potential defendants when it imposed liability on "persons" under § 1983. 491 U.S. at 65. Noting that ordinary rules of statutory construction required Congress to make any alteration of the "usual constitutional balance between the States and the Federal Government ... unmistakably clear in the language of the statute," the Supreme Court observed that had Congress intended to include States as "persons" for the purposes of § 1983, it would have explicitly done so. *Id.* at 65 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)). Two years later, the Supreme Court reaffirmed its holding in *Will* and explained that "interpreting the words '[e]very person' to exclude the States accorded with the most natural reading of the law, with its legislative history, and with the rule that Congress must clearly state its intention to alter 'the federal balance' when it seeks to do so." *Hafer*

*v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will*, 491 U.S. at 65). Thus, Congress has not abrogated Eleventh Amendment sovereign immunity in the context of a § 1983 action for the States or their employees and agents acting in an official capacity. *See Quern v. Jordan*, 440 U.S. 332, 340 (1979).

As to the third and final exception, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123 (1908)); *Freeland v. Ballard*, 6 F. Supp.3d 683, 694 (S.D.W. Va. 2014) ("Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds."). "The *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 155-56). The state officer being sued must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id.* Moreover, the exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted). Here, Sutton does not allege that a governmental policy or custom is unconstitutional, nor does he identify a governmental official responsible for enforcing an unconstitutional policy or custom. Therefore, this exception does not apply.

Given that the WRJ and the individual defendants acting in their official capacities are entitled to sovereign immunity, and no exception to that immunity applies, the undersigned **FINDS** that Sutton's claims against the WRJ, and his claims for money damages against the individual defendants action in their official capacities, should be dismissed.

### D.    *Exhaustion of Administrative Remedies*

Defendants argue that the action should be dismissed because Sutton failed to exhaust his administrative remedies prior to filing suit. (ECF No. 20 at 16). Sutton stated in his complaint that he used "L.O.C.," filed grievances, used the "Disc Appeal Process," and was not afforded relief on his claims. (*Id*. at 3). He also contends he was denied access to administrative remedies and grievance forms. (ECF No. 2 at 4–5).

The PLRA requires prisoners to exhaust administrative remedies prior to filing a complaint in federal court. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Porter v. Nussle,* 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.") (citations and internal quotation marks omitted). The purpose of the exhaustion requirement is twofold: first, "exhaustion protects administrative agency authority" by giving an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal

court…and it discourages disregard of the agency's procedures;" second, "exhaustion promotes efficiency," as claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court" and sometimes "claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citations omitted). Further, "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Id.*

In *Ross v. Blake*, the Supreme Court of the United States ("Supreme Court") considered a case in which a Maryland state inmate filed a § 1983 complaint alleging that a correctional officer used excessive force against him and that another officer failed to take action to protect him. *Ross*, 136 S. Ct. 1850, 1855 (2016). One of the officers raised the PLRA's exhaustion requirement as an affirmative defense, stating that the inmate brought suit without first following the prison's prescribed procedures for obtaining an administrative remedy. *Id.* The district court dismissed the lawsuit for lack of exhaustion, but the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") reversed the decision, stating that the PLRA's exhaustion requirement was "not absolute" and special circumstances could excuse exhaustion, such as when a prisoner reasonably, but mistakenly, believed that he had sufficiently exhausted his administrative remedies. *Id.* at 1856. Upon review, the Supreme Court explicitly rejected the Fourth Circuit's "special circumstances" exception, noting the exhaustion requirement in the PLRA is statutorily mandated and not amenable to judicially created exceptions. *Id.* The Supreme Court explained that the mandatory language of the PLRA meant that a court may not excuse a

failure to exhaust, even to take special circumstances into account. *Id.*

Yet the Supreme Court pointed out in *Ross* that the PLRA does contain one express exception: an inmate need not exhaust "unavailable" remedies. *Id.* at 1858. The Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide relief to aggrieved inmates." *Id.* Second, an administrative process is likewise unavailable when it is "so opaque" that "no ordinary prisoner can discern or navigate it." *Id.* Finally, an inmate need not exhaust administrative remedies when prison officials thwart the inmate's access to the grievance procedure "through machination, misrepresentation, or intimidation." *Id.* at 1860. "[S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable." *Id.*

Sutton challenges the treatment he received while incarcerated in a West Virginia correctional facility. Consequently, he was also required to exhaust his administrative remedies in accordance with the West Virginia Prisoner Litigation Reform Act, W. Va. Code § 25-1A-1, *et seq.*, before filing this federal lawsuit. Even if West Virginia law provides exceptions to the state's exhaustion requirement that are not offered under the PLRA, the federal exhaustion requirements govern this action. Therefore, Sutton must have exhausted the state's administrative remedies unless they were unavailable to him. *Freeland v. Ballard*, No. 2:14-CV-29445, 2017 WL 337997, at *3 (S.D.W. Va. Jan. 23, 2017) (collecting cases).

In West Virginia, the administrative remedy procedure of an inmate's place of

confinement governs the exhaustion process. *White v. Haines*, 618 S.E.2d 423, 431 (W. Va. 2005) ("[B]efore an inmate may bring a civil action challenging the conditions of his/her confinement, he/she must first exhaust the administrative remedies provided by the correctional facility *in which he/she is housed*.") (emphasis added). At the relevant time, exhaustion of administrative remedies in regard to claims involving the conditions of confinement at a state correctional facility required a "final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee." W. Va. Code Ann. § 25-1A-2.

As stated, exhaustion of remedies is mandatory and has limited exception. *Porter,* 534 U.S. at 524. Sutton claims that he filed and appealed grievances concerning the issues he now raises. While Defendants—citing to no exhibits or records supportive of this position—allege that Sutton has failed to avail himself of the administrative remedy process, at this early stage of litigation, neither party has taken the opportunity to develop and produce evidence determinative of the exhaustion issue. Based on the limited record before the Court, and Sutton's claims that he filed and appealed his grievances and the administrative remedy process was unavailable to him, it would be premature to dismiss the amended complaint for failure to exhaust administrative remedies. *See Custis v. Davis*, 851 F.3d 358, 361–62 (4th Cir. 2017) (discussing that it is a rare, exceptional instance where administrative exhaustion is apparent on the complaint's face and noting that the inmate's statement that he attempted to exhaust his administrative remedies "may equally imply that he attempted, but could not, exhaust his administrative remedies—and thus, that he exhausted all remedies that were available to him"); *see also Spradlin v. Rodes*, No. 3:16-CV-06986, 2017 WL 4277150, at *3 (S.D.W. Va. Aug. 31, 2017), *report and recommendation adopted,* No. CV 3:16-6986, 2017 WL 4248849

(S.D.W. Va. Sept. 25, 2017) (same); *White v. Van Duncan*, No. 1:10-cv-014, 2010 WL 2813492, at *2 (W.D.N.C. July 15, 2010) (finding that, based on the limited record and viewing the allegations in the light most favorable to the plaintiff, the plaintiff attempted to utilize the administrative grievance procedure and his grievances were ignored and it would be improper to dismiss the complaint for failure to exhaust, as the issue could be raised later in a motion for summary judgment); *Brightwell v. Hershberger*, No. CV DKC 11-3278, 2016 WL 5815882, at *2 (D. Md. Oct. 5, 2016) ("The practical availability of remedies is not a pure question of law. As the Supreme Court noted when remanding *Ross v. Blake*, determining whether administrative remedies are truly available requires development of a record of facts and evidence relating to whether the administrative process operated as a dead end, whether it was knowable by an ordinary prisoner, and whether officials thwarted the effective invocation of the administrative process through threats, game-playing, or misrepresentation.") (citations omitted). Therefore, the undersigned **FINDS** that Defendants' motion to dismiss on the ground of lack of exhaustion is premature; although, other independent grounds to dismiss the complaint have been established.

## IV.    <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT** Defendants' Motion to Dismiss, (ECF No. 19); **DISMISS** the Complaint, (ECF No. 2), **without prejudice**; and **REMOVE** this case from the docket of the Court.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section

636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff and any counsel of record.

**FILED:** November 15, 2021

Cheryl A. Eifert
United States Magistrate Judge

26